IN THE

## SUPREME COURT OF JUDICATURE

OF THE

### STATE OF NEW JERSEY,

AT FEBRUARY TERM, 1833

---

### JOHN STEVENS and WIFE and ANNA and REBECCA STEVENS v. JAMES ENDERS.

The legislature intended to apply the more easy partition of lands by commissioners, provided for in the act of November 1789, *Rev. Laws* 89, to all such estates, as were then subject to partition at the common law, and under the statute of 31 *Henry* 8, *cap.* 1, and as between all such persons or tenants, as were compellable to make partition by writ under the 32d *Henry* 8, *cap.* 8, and subject to the same restrictions. Under the statutes of 31 and 32 *Henry* 8, partition could be compelled between those who held as joint tenants or tenants in common, of estates of inheritance in their own right, or in right of their wives, and those, who held as tenants in common or as joint tenants for life, or years ; or where one had an estate for life or years, and another of freehold, or inheritance, and a tenant by the curtesy.

Persons in remainder, whether the remainder be contingent or vested, and who are not at the time of suing out the writ in actual possession, or entitled to immediate possession in severalty after partition made, cannot be parties to the writ of partition. In such case the judges of the Common Pleas have no authority to make an order of sale, nor to approve of and confirm it, and the commissioners have no authority to make a sale or conveyance.

No owners can be made parties in partition, but such as are entitled to the present possession of their shares. The design of partition is, that owners, who before enjoyed in common, shall each have possession of his share in severalty.

Where a party applied for a writ of certiorari in November term 1828, and had a rule to shew cause, the argument had been from time to time postponed, till May term

Stevens *v.* Enders.

1831, when the writ was allowed and issued, the statute *Rev. Laws* 629, *sec.* 7, was considered as fulfilled. When a rule to shew cause comes to argument, it always relates back to the time it was granted.

A petition was presented by James Enders to three of the judges of the Court of Common Pleas of the county of Essex, on the fourteenth day of May 1827, praying the appointment of commissioners to make partition of certain premises therein named, or to make sale thereof, according to the provisions of the statute, in such case made and provided. Commissioners were appointed who reported that the premises could not be divided, without prejudice to the owners. On this report being filed, three judges of the pleas made an order, that the commissioners should sell the premises at auction. They subsequently reported, that they had sold the premises to James Enders, for six hundred and eighty dollars, and the Court of Common Pleas approved and confirmed the sale, and directed the commissioners to execute to James Enders, a conveyance for the same. The proceedings were removed into this court, by certiorari, and the cause was argued at the last term by *O. S. Halsted* and *Scudder*, for the plaintiffs in certiorari, and *John J. Chetwood* for defendant.

The opinion of the court was delivered at this term.

HORNBLOWER, C. J. On the 14th of May, 1827, James Enders presented a petition to three judges of the Common Pleas of Essex county, stating himself to be the owner in fee of three fourth parts of certain lands and premises therein mentioned; that John Stevens and Mary his wife owned the remaining one fourth part, in right of the said Mary, as devisee of John Ross, her father, for life—that after her death the same was devised to Smith Stevens, son of the said John and Mary; and in case of his death, without 'heirs,' to Anna Stevens and Rebecca Stevens, daughters of the said John and Mary, in fee—that Smith Stevens, the first devisee in remainder, had died without issue; so that the premises were held by the said James Enders, and by John and Mary Stevens, as tenants in common; he owning three undivided fourth parts in fee, and they owning the other fourth part, during the life of the said Mary, with remainder to the said Anna and Rebecca Stevens: and thereupon the said James Enders prayed the appointment of commissioners to

Stevens *v.* Enders.

make partition of the said premises, or to make sale thereof, according to the provisions of the statutes in such case made and provided. Upon this application commissioners were appointed on the 2d July, 1827, pursuant (as the order making the appointment purports to be) to the act entitled " An act for the more easy partition of lands held by co-parceners, joint tenants and tenants in common," passed the 11th November, A. D. 1789—on the 2d July, 1827, (the same on which they were appointed) the commissioners reported that the premises could not be divided without great prejudice to the owners, whereupon the same three judges, made an order, dated the 24th July, 1827, (purporting to be) in pursuance of the act passed the 7th February, 1815, supplementary to the act of 1789; that the commissioners should sell the premises at auction, giving notice, &c. as the law directs. On the 22d Sept. 1827, the commissioners reported to the judges of the court of Common Pleas of the county of Essex, that the premises had been sold by them to James Enders for six hundred and eighty dollars, he having been the highest bidder; and in the term of September, 1827, the said court made an order approving of, and confirming the sales as valid and effectual in law, and directing the commissioners to execute to Enders, a conveyance of the premises.

The plaintiffs in certiorari seek to have these proceedings set aside and vacated, as contrary to law.

At common law none but co-parceners were compellable to make partition, 1 *Bac. Abr.* 699; *tit. co-parceners, let.* D. By the statute of 31 *H.* 8, *cap.* 1, the writ *de partitione facienda,* was extended to joint tenants and tenants in common of estates of inheritance, in their own rights, or in right of their wives; and by the statute of 32 *H.* 8, *cap.* 2, the like remedy by writ, was given to joint tenants and tenants in common, for life, or years; or where one tenant has an estate for life, or years, and the other of inheritance or freehold, 3 *Bac. Abr.* 690, *tit. joint tenants and tenants in common,* I. 7. But this last statute contains a proviso, that "no such partition shall be prejudicial to any person or persons, their heirs or successors, other than such which be parties unto the said partition, their executors or assigns." On the 11th of November, 1789, our legislature passed the act for the more easy partition of lands held

18

by co-parceners, joint tenants and tenants in common. At that time the statutes of 31 & 32 *H.* 8 were in force in this state, at least like some other of the old British statutes, were recognized by us, as constituting the rule of action and property on the subject matter to which they respectively related, although not expressly adopted or enacted by our legislature. On the 9th of March, 1797, the legislature of this state passed the act, entitled "An act to compel joint tenants and tenants in common to make partition and for the more easy obtaining partition of lands in co-parcenary, joint tenancy and tenancy in common," (*Rev. Laws*, 299.) This act embodies in substance the 31 *H. cap*. 1, and 32 *H.* 8, *cap*. 2 ; including the proviso contained in the latter and which I have before quoted. After the passage of this act, namely in June 1799, our legislature by express enactment, declared that from and after that time no statute or act of Parliament of Great Britain should have any force or authority, or be considered as law within this state, (*Pat. Rev.* 435, 436.)

The first question that presents itself, in view of the common law and of these several statutes is, what estates and as between what description of tenants, did the legislature intend to apply the more easy partition by comm'rs, provided for in the act of November 1789? The obvious answer is to all such estates as were then subject to partition at the common law and under the statute of 31 *H.* 8, *cap*. 1, and as between all such persons or tenants, as were compellable to make partition by writ, under the 32 *H.* 8, *cap*. 2, and subject to the same restrictions. It is true the preamble of the act of November 1789, speaks of the difficulties, attending the proceedings, *at common law*, upon writs of partition, between co-parceners, joint tenants. and tenants in common. But we must not impute to the legislature the charge of ignorance of the fact, that joint tenants and tenants in common, were not compellable at common law to make partition. Nor is there room for such a charge, for considering the statutes of 31 and 32, *H.* 8, then in force in New Jersey, such tenants were by force of those statutes, subject to the common law writ, *de partitione facienda*. Between what class or description of tenants then, could partition be compelled, under the statutes of 31 and 32 *H.* 8 ? I answer, those who held as joint tenants, or tenants in common of estates of inheritance, in their own right, or in

right of their wives; and those who held as tenants in common, or as joint tenants, for life or years; or where one had an estate for life or years and another of freehold or inheritance; and I may add, by the equity of the statute of 32 *H.* 8, *cap.* 2, a tenant by the curtesy; for though he is neither a tenant in common or a joint tenant, he is, as the books express it, "in the same mischief." *Co. Litt.* 175, *b. lib.* 3, *cap.* 1, *sec.* 264. But none are to be hurt or prejudiced except those who are parties to the writ; who then can be parties to the writ of partition: Can persons in remainder, whether the remainder be contingent or vested, and who are not at the time of suing out the writ, in actual possession or entitled to immediate possession in severalty after partition made? I think they cannot, either upon principle or authority. The objects of a partition are to avoid the inconvenience that results from a joint or common and united possession, and to enable the persons entitled to know, take possession of, enjoy and improve their respective shares. But this inconvenience is not felt by a remainder man; nor can it as regards him be removed by a partition; for his estate is in *futuro* not in *presenti*. An attention to the preamble of 31 *H.* 8, as well as to the proviso annexed to 32 *H.* 8, is sufficient to satisfy every enquirer, that the provisions of those statutes were never intended to apply to or affect the rights of persons in remainder, but only of those, who on a partition would be entitled to immediate possession is severalty. I forbear to pursue this enquiry further, because it has undergone the examination of the late Chief Justice Ewing, on application to him for the appointment of commissioners under the act of 1789, by a person claiming one moiety of the premises in fee, and the other moiety standing out upon a life estate in the whole premises with remainder to other persons. I have had the benefit of a manuscript copy of his opinion; the result of which is, that a remainder man, cannot be made a party to a writ of partition. In support of which opinion he has cited a number of clear and convincing authorities, and which, in the hope and expectation that the Reporter will give the profession the benefit of that opinion, I shall refrain from citing.

If I am right then in this view of the subject, James Enders was entitled to have partition, under the statute, only as between

Stevens *v.* Enders.

him and the tenants for life, to endure so long as the life estate of John Stevens and his wife lasted.

But the commissioners reported that the premises could not be divided without great prejudice to the owners, and hence arises the question, was he then entitled to have a sale of the whole premises or estate under or by force of the supplement to the act of 1789? This supplement which was passed the 7th February 1816, (*Rev. Laws*, 597, 598) provides, that whenever application shall be made by a co-parcener, joint tenant or tenant in common, guardians of minors, or trustees, for a partition under the act of November 1789, and the commissioners shall report that a partition cannot be made without great prejudice to the owners, the justice, judges or court, (who appointed the commissioners) may order a sale of the premises, &c. Will a sale then under the provisions of this supplement, bind or affect the rights of those who could not be bound or prejudiced by a partition? If the sound rules of construction, and the general principles of law did not enable us to answer this question in the negative, I think the legislature has given that answer, in the 4th section of the supplement, (*Rev. Laws*, 598,) by enacting in express terms, that no sale or conveyance under that act, should "impair or in any way affect the rights and interests of any person or persons therein, other than the person or persons, *being* or *claiming to be*, co-parceners, joint tenants or tenants in common in the same." The enquiry then arises, were Anna and Rebecca Stevens, co-parceners, joint tenants or tenants in common with James Enders, in the premises? Or did they or either of them claim to be such? Certainly not; they had, at most a vested remainder in the premises, and were not tenants, in any such sense, as the statute contemplates. They are not then bound or affected by the sale, as I apprehend, by the very terms of the act, for I consider the proviso in the 4th section of this supplement, as entirely equivalent to the proviso in the 2d section of the act of 9th March, 1797, (*Rev. Laws*, 299) which latter section is in that respect a copy of 32 *H.* 8, *cap.* 2. In the one the rights of persons not parties to the writ of partition, are saved; in the other, the rights of persons not being or claiming to be tenants; and we have seen that persons not being tenants in possession or entitled to immediate possession, cannot be par-

ties to the writ *de partitione facienda*, and consequently such cannot be affected by a sale. Moreover, if the legislature had intended such an innovation upon established principles, as to sell the rights of persons in remainder, it is reasonable to suppose, they would have prescribed some rule by which to apportion the expense, and the proceeds between the tenant for life, and the remainder man, and have given some direction also as to what should be done with the money in the case of contingent remainders. But upon these subjects the statute is silent. It is contended however, that admitting the persons in remainder are not bound, yet the sale and conveyance are operative at least, until the life estate ceases. I think not. If the law does not contemplate and authorize, an absolute sale of the whole estate in a case like this, the judges had no right to make an order for such sale; nor to approve of and confirm it; and consequently the commissioners had no authority to make such sale or conveyance. I am therefore of opinion that the order for a sale, and the subsequent order approving of and confirming the sale and directing a conveyance, should be vacated and set aside. This is not trying a title, on certiorari, but removing out of the way, an unlawful proceeding, that may prove an incumbrance, or hang as a cloud over an estate.

But another objection remains to be considered; the defendant's counsel insists that this certiorari comes too late. The order approving the sale, &c. (which was the last proceeding in the matter below) was made in September term of the Essex Common Pleas in 1827. The allocatur, as appears by an endorsement on the certiorari was signed in open court, in May term of this court 1831, and it is contended, that by the act of Assembly, (*Rev. Laws*, 692) no certiorari could be allowed or issued, unless the same was done within eighteen months after the last proceeding below. Two answers were given at the bar to this objection. 1st. That an allocatur was moved for and a rule was made to shew cause why it should not be granted, in November term, 1828, which was within the eighteen months, and that the rule was pending and undetermined until May Term, 1831, when it was made absolute. If this was the only answer, I should have some doubt upon this point, unless indeed, the lapse of time had been urged in opposition to the allocatur, and the objection over-

ruled by the court when they allowed the writ. It that case it would be *res judicata*, and I should feel myself bound by such decision. But another and to my mind, a satisfactory answer was given to this objection, viz : That this is not a certiorari within the statute. The restriction is applied to certioraries to remove " the judgment, order or proceeding, of any court of record." An order or proceeding of a court of record, in legal acceptation, has reference to something done in the usual and ordinary course of proceedings, incident to such a court in the administration of justice. In a more comprehensive sense, it may sometimes include such extraordinary or extra judicial proceedings, as have been directed by statute to be done in a court of record ; as if all the proceedings for a partition under the statute had been directed by law to be done in court. But such is not the fact ; the nomination and appointment of commissioners, the order for a sale and the intervening proceedings, are done by or before three judges, not acting judicially in their common law capacity, but rather as commissioners *pro hac vice,* designated by their official stations. The only thing done in court is the order approving the sale, and if that cannot be reached by certiorari after eighteen months, the appointment of commissioners, the order for partition and the order for sale, may be. In truth it is a mixed proceeding, and not entirely of such a character as the statute contemplates, and therefore not within it. This court ought not to relinquish its general superintending control over inferior jurisdictions and mere temporary tribunals, unless restrained from exercising it by the plain negative words of a statute, or at least the unequivocal and manifest intention of the legislature.

This is not like the case of *Cozens and Ux* v. *Dickinson*, 2 *Pen. Rep.* 507. The partition in that case had been a proceeding of the Orphans' Court throughout, in the exercise of its appropriate jurisdiction, under the act constituting and regulating that court, (*Rev. Laws* 779, 780) in the 33d section of which it is expressly enacted that no final sentence or decree shall be removed by certiorari, unless applied for within ninety days after such sentence or decree shall be made, and not afterwards. I am therefore of opinion that the certiorari in this case is not barred by the limitation in the statute.

Stevens *v.* Enders.

FORD, J. James Enders applied to three judges of the Court of Common Pleas for the county of Essex, to make an order for the partition of a mill and premises, situate on the north branch of Rahway river, averring himself to be the owner in fee simple of three undivided fourth parts of the premises, and that the other fourth part was owned by John Stevens and Mary his wife, for the life of the wife, remainder after her death to Anna and Rebecca Stevens in fee. The commissioners appointed in pursuance of the application, to make partition, reported, that it was impracticable to be done without great prejudice to the owners; and thereupon the judges made an order for them to sell the premises; they accordingly sold them in the manner directed by statute, to James Enders himself, at auction, for six hundred and eighty dollars; and the sale being reported to the court and approved of, an order was made to execute to him a good and sufficient conveyance for the premises. The proceedings and order being removed into this court by certiorari, the plaintiffs object that the proceedings and order are altogether illegal.

If the proceeding is illegal as to any one of the part owners, the purchaser's title will fail as to such part, and therefore the whole proceeding must be void. Now it appears to me very clear, that no owners can be made parties in partition, but such as are entitled to the present possession of their shares. They need not indeed be in actual possession, it being enough if they are legally entitled to demand it, or if another is in possession as their tenant. But Anna and Rebecca Stevens have no present possession of their fourth part, nor any right to enjoy, or demand the enjoyment of it, during the life of Mary Stevens; and therefore they cannot be parties to a partition, either at common law or by statute. The common law does not authorize an action for partition between any persons but co-parceners, and Anna and Rebecca Stevens are not such. Joint tenants and tenants in common could never sue for partition, till the right was conferred on them by statute of 31 and 32 *Henry* 8; 2 *Bl. Com.* 188. As these statutes with very little variation, have been enacted in our own state, the right of partition, if it exists at all, must be such as is given by them, and they will be found to restrict it to such as are seized, and have a right to present

possession and enjoyment. Our first act was passed in 1789, *Rev. Laws* 89, and our second in 1797, *Rev. Laws* 299.

The parties intended to be affected by our first act are plainly expressed in the title, it being entitled "An act for the more easy partition of lands held by co-parceners, joint tenants and tenants in common." Therefore, those who hold, and none but holders, are provided for; but Anna and Rebecca Stevens are not holders nor can they ever be such during the life of Mary Stevens, and therefore they are not within the title of the act; they can neither sue nor be sued for partition. Moreover, the preamble mentions none but tenants, and that word means holders, from the word *teneo* to hold. The first section in the body of the act, directs the judges to ascertain the shares in which such lands are held, and as Anna and Rebecca Stevens do not yet hold any share, the statute gives the judges no jurisdiction over them. The fifth section directs the commissioners to allot a share to each tenant or holder by ballot, but Anna and Rebecca Stevens are not holders during the life of Mary Stevens, and therefore they can have no ballot. The eighth section directs that the partition shall be as valid as if made by writ, and as any part set off by writ to persons not entitled to hold, would be void, it follows that partition in this way must also be void. Thus we find nothing in this whole act to authorize partition except among holders entitled to the present enjoyment and profits of the land.

Let us next see whether the latter act of 1797, *Rev. Laws.* 299, authorizes partition by writ, among any others than those entitled to present possession. The first section gives the writ of partition to joint tenants and tenants in common, that is, to joint and common holders, or such as are entitled to the seizin and possession of land, and extends no further. The second section gives the writ to and against any tenants, whether they be in fee, for life or for years; but does not authorize such as are not tenants or holders, either to sue out the writ, or to have it sued out against them. There is a proviso in this section that it shall not be hurtful to any who are not parties to the partition; and though Anna and Rebecca Stevens cannot be legal parties, yet they are hurt by having their rights taken entirely away from them and sold. The design of partition is that owners, who

Stevens *v.* Enders.

before enjoyed in common, shall each have possession of his share in severalty; but this cannot extend to remainder men, who cannot intermeddle with the profits of the land during the continuance of the particular estate, nor have a present enjoyment either way, either in common or severalty. This is the reason why they cannot, under our statute, either apply for partition themselves or be made parties to an application by others. It would be very unjust that their rights should be seized and disposed of forever, by a proceeding to which they could not be parties, and when they had not the privilege of being heard. To shew more fully that this cannot be done I refer to *Coke Lit.* 167, *a;* 1 *Fonb.* 18 *in note;* 17 *Vez.* 548; 2 *Scho. & Lef.* 372; 7 *Mas.* 475; 9 *Mass.* 508, *and* 6 *Dane's Ab.* 480. These cases are cited in an unpublished manuscript opinion of the late Chief Justice, drawn up with great learning and ability, on the application of Clarissa Burroughs; wherein the law is very clearly explained; and I refer to the cases without stating any of them, in order to procure a publication of the opinion *in extenso* for the benefit of the public.

It is argued, that the persons in remainder have lent their names as parties in certiorari, when they were not parties to the proceeding for partition, nor intended to be made such. But the intent and fact are to be determined by the application itself, in which they are named and their interest specified, just as particularly as the names of John Stevens and Mary his wife and their interest; and being all named together, their interests will be all conveyed under the second section of the supplement, *Rev. Laws*, 598, which makes no discrimination of interests, but says that the tract, that is, the whole interest, shall be sold. Moreover, such sale shall operate as a bar, by the third section, to all the owners and proprietors, and as these persons are owners and proprietors in remainder, they will be barred within the express words of the section, if this partition is legal. Furthermore the fifth section disposes of the purchase money among those interested, according to their respective rights in the land, and that these persons have rights and interest in the remainder is admitted. As the order for sale is general, and makes no reservation of the rights of any part owner, the commissioners will convey the tract in fee simple, and so pass the rights and

bar the future claims of these parties forever, if this is a legal partition under the statute. I grant that by the fourth section the sale of the land is not to impair the rights of any except the tenants or holders; but this is only an additional proof that partition will not lie where some of the land is in remainder, because the tract as a whole is incapable of being sold. If this partition is legal, the rights of those who have fractions in remainder, of the same title, will be all concluded, and therefore these persons in remainder, thus operated on, are entitled to relief by certiorari as much as any others named in the partition.

If this application had been for partition between James Enders and the tenants for life, during the continuance of their estate for life, only, it could not have affected these persons in remainder. He and the tenants for life can make a partition by private agreement, that will bind the estate for the lives of the latter. But whether the statute ever contemplated a compulsory limited partition; or the supplement a compulsory limited sale; in fine, whether the statutes are broad enough to compel an owner in fee simple, into a sale of his inheritance, for the life of a tenant for life, are questions belonging to a different case, and must be left open, till some party, believing in the utility of such a partition, shall make the attempt and bring it before us.

But it is objected that this certiorari was not sued in time, according to the statute, *Rev. Laws*, 692, *sec.* 7, which says, that none shall be allowed or issued, on the order of any court of record unless the same be issued in eighteen months after obtaining such order. Now the order was made in September term 1827, and though the plaintiffs applied for a writ in November term 1828, and had a rule to shew cause, the argument of the rule was not had until May term 1831, when the writ was allowed and issued, three years and a half after the date of the order. It was answered that the statute does not apply to this order, because the Common Pleas did not proceed therein according to the course of the common law; but this is not sufficient, for it is the order of a court of record, and the statute makes no distinction as to the mode of proceeding. As the writ was moved for within the eighteen months it must be quashed, if at all, because the court considered of it too long, or because of the

Stevens *v.* Enders.

plaintiff's tardiness in bringing it to argument; yet neither of these reasons can prevail. Where other suitors had legal priority, this cause could not have precedence, nor restrain the court from hearing it deliberately argued. The statute does not mean to marshal the order of hearing causes in court, nor to disallow deliberation on important questions. A consent of the parties between themselves to frequent postponements, is inferrible from there being no motion to discharge the rule for not bringing on the argument, and if *consensus non tollit errorem* consent turns into a trick. But beside all these matters, when a rule to shew cause comes to argument and is allowed, it always relates back to the time it was granted, and as that was done within the eighteen months the statute is fulfilled. On the whole the order for making a conveyance of the premises must be reversed and set aside.

DRAKE, J. An objection is taken to these proceedings, in behalf of Anna and Rebecca Stevens, denying the authority of the commissioners to divide or sell lands, under the circumstances of this case, and I think the objection is well taken. The opinion of the late Chief Justice, in the case of Clarissa Burroughs, lays down the position, that an estate to be the subject of partition must be a subsisting estate, held in common or undivided, by persons entitled, on the making of partition, to the immediate possession in severalty. This position is sustained, by shewing the uniform construction put upon the English statutes of 31 and 32 *H.* 8, the enacting clauses of which are substantially contained in our act, *Rev. Laws*, 299; and that the act, *Rev. Laws*, 89, is, as it purports to be, merely a more easy mode of effecting the same object, and was not intended to authorize partition between persons who could not properly be made parties to a writ of partition.

That was a case of application by one of the common owners of an estate in remainder, who also had a life estate in the premises sought to be divided. This is an application by the owner in fee simple of the undivided three fourth parts of the land, who would sever it from the remaining fourth part, in which there is an estate for life now existing, distinct from the remainder and held by different persons. A distinction was insisted on, upon the argument, between the two cases. They vary, how-

·ever, but little in circumstances, and nothing in principle. Both .are alike affected by the rule, that remainder men cannot be bound by this proceeding, whether made parties to it or not.

It was also suggested, in argument, that the supplement to the act of 1789, *Rev. Laws*, 597, contemplates a case like the present. But I can see nothing in that act, evincing any .intention in the legislature to extend the power of partition to new cases. A sale is authorized, not where partition cannot be made, but where it cannot be made without great prejudice ·to the owners. The fourth section expressly reserves the rights ·of all persons, other than the co-parceners, joint tenants and tenants in common. And the just inference to be drawn from the provision made in the ninth section, for the single ·case of ·dower, is not, that money was contemplated to be kept on hand .arising from the sale of the interests of remainder men: but rather the contrary.

As to the preliminary objection which was made to our taking ·cognizance of this case, founded on the limitation of writs of ·certiorari, as contained in the seventh section of the act, *Rev. Laws*, 692, I am of opinion that this provision is not applicable to a proceeding of this kind. And even if it were, that the party having applied for his writ in proper time, should not be prejudiced by the allowance having been kept in suspense in this court.

---

The following is the opinion referred to in the foregoing case. It is endorsed in the hand-writing of the late Chief Justice Ewing thus, "Delivered to Mr. Jeffers of Counsel for Clarissa Burroughs, and Mr. Wall of Counsel in opposition to the partition, during November term, 1827.

EWING, C. J. William Parret, formerly of the county of Salem, by his will, devised certain real estate to his wife during her natural life, and if after his decease she should marry and have issue who should live to the age of twenty-one years, in that case such issue to have one moiety or half share of the aforesaid real estate after the death of his wife, to his, her or their heirs and assigns forever, and the other moiety or half part of the said real estate, after the death of his wife, to be divided equally between Richard Dunlap, Isabella Bradway, Elizabeth Dunlap and Mary Howell, each of them one fourth, in value to them, their heirs and assigns forever.

After the decease of William Parret, his widow married Ed-

ward Burroughs, and had issue, a daughter, Clarissa Burroughs, who has some time since attained the age of twenty-one years. The life estate given by William Parret in his will to his widow has been conveyed by her to, and is now vested in, the said Clarissa Burroughs. The widow is yet living.

Clarissa Burroughs, the younger, has applied under the act of November, 1789, for a partition of the real estate into two moieties, one for herself in severalty, and the other for Richard Dunlap and the other devisees above named, subject however to the life estate of the widow now owned and held by the daughter, in the whole premises ; and without waiving or relinquishing the same; and without intending that R. Dunlap and others shall take possession or in any way enjoy the moiety sought to be set apart for them, until the determination of the life estate.

The partition is opposed by Richard Dunlap and others, the said devisees ; and the question is, whether partition may now be made?

By the will, it is seen, that an estate for life with remainder in fee simple is created. The estate for life is now held by Clarissa Burroughs, the applicant, in consequence of a conveyance from her mother. The estate in remainder is held in common by her and by Richard Dunlap and others, she being entitled to one moiety and they, among them, to the other moiety. As she does not yield up or relinquish the life estate, the case is to be considered as an application of one of the common owners of an estate in remainder, to divide the same during the existence of a precedent estate for life.

An estate to be the subject of partition must, in my opinion, be a subsisting estate held in common or undivided, by persons entitled, on the making partition, to the immediate possession in severalty. An estate in remainder, an estate to be possessed and enjoyed, not in *presenti*, but in *futuro* only, is not the proper subject of partition.

To this conclusion, sound principle, independent of authority, appears to me, directly to lead. What is the intent of partition? It is that each owner may know and hold and enjoy his own portion in severalty. It is to prevent the various inconveniences which oftentimes result from holding property in common. But these objects, it is manifest, are not subserved by

division now of an estate which may not for many years, come into possession. Moreover, by a premature partition, the purpose of him by whom the estate in remainder is created, would in many, perhaps in most instances, be defeated. As where a testator gives a farm for life, and afterwards to be divided between persons equally as to quantity and quality, he intends an equality at the time the estate falls into possession, and not at any antecedent period.

At the common law parceners only were compellable by writ to make partition. By statute 31 *Hen.* 8, estates of inheritance held by joint tenants and tenants in common, were subjected to compulsory partition ; and by statute 32 *Hen.* 8, joint tenants and tenants in common of estates for life or years, or where one held for life or years and another held an estate of inheritance or freehold, were rendered compellable to make partition by writ. The enacting clauses of these statutes are substantially contained in our statute of 9th March, 1797 ; *Rev. Laws* 299. The preamble of the first mentioned statute gives not only the reason for rendering such estates liable to division, but very distinctly points out the owners among whom it was intended to operate. "And every of them so being joint tenants or tenants in common, have like right, title, interest and *possession* in the same manors, &c. for their parts and portions jointly or in common undividedly together with other, and none of them by the law does or may know their several parts or portions in the same, or that that is his or theirs, by itself undivided, and cannot by the laws of this realm otherwise *occupy or take the profits* of the same, or make any severance, division or partition thereof without other of their mutual assents or contents, by reason whereof divers and many of them being so jointly and undividedly seized of the said manors, &c. oftentimes of their perverse, covetous and malicious minds and wills, against all right, justice, equity and good conscience, by strength and power not only *cut and fallen down all the woods and trees* growing upon the same, but *also have extirped, subverted and pulled down* and destroyed all the houses, edifices and buildings, meadows, &c. and the whole commodities of the same, and *have taken and converted them to their own use* to the open wrong and disseissin and against the minds and wills of others holding

the same manors, &c. jointly or 'in common with them, and they have been always without assured remedy for the same." The joint tenants and tenants in common referred to in this preamble and for whose benefit the statute was passed, are obviously such as are in possession or are entitled to immediate possession. The proviso annexed to the enacting clause of statute 32 *H.* 8, equally shews that it was not 'intended to operate on estates in remainder. After making joint tenants and tenants in common who hold for term of life or years, or where one of them has an estate for life or years and the other of inheritance or freehold, liable to become parties to writs of partition, it provides that " no such partition shall be prejudicial to any person or persons, their heirs or successors, other than such which be parties unto the said partition, their executors or assigns."

*Lord Coke* in his comment on *Littleton,* 167, *a,* speaking of parceners says, " If one or both make a lease for life, a writ of partition doth not lie between them, because *non insimul et pro indiviso tenent,* they do not hold the freehold together." Yet they would remain entitled to the reversion in common, but this it seems is not sufficient to sustain a writ of partition. *Fonblanque* in his treatise says—" If the parties are in any degree complicated it is extremely difficult to proceed at law, or where the tenants in possession are seized of particular estates only, for the persons entitled in remainder cannot be bound by the judgment in a writ of partition." 1 *Fonbl.* 18, in note. Here the author distinctly states, that the proper parties to the writ of partition are the tenants in possession, and that persons entitled in remainder cannot be bound by the judgment and of consequence cannot be proper parties to the writ. In 17 *Vez.* 548, it is remarked by *Sir Samuel Romilly,* " All authorities state that a bill for partition is exactly the same as the writ at common law. With this single distinction, that under the writ those only are bound who are entitled to *a subsisting estate* of freehold, not those *entitled in remainder,* whom a *court of equity* will bind as well as those who have *particular estates.*" It is true this is the remark of counsel only, but it was not contradicted by the adverse counsel nor by the chancellor, and is conformable to the doctrine stated by Fonblanque. In 2 *Scho. and Lefroy,* 372, *Chancellor Redesdale* said—" Partition at law and

in equity are different things. The first operates by the judg-
ment of a court of law *and delivering up possession* in pursuance
of it which concludes the parties to it." In *Bonner* v. *Proprietors
of Kennebeck,* 7 *Mass.* 475, the Supreme Court of Massachusetts
held, that " process for partition lies only for persons *actually
seized."* *Dane* in his abridgment of American law, 6 *vol.* 480,
says, " The petitioner for partition must have an interest on
which he can legally *enter."* In *Wells* v. *Prince,* 9 *Mass.* 508, *a
right of entry* was deemed necessary to entitle a person to apply
for partition. I need not explain what is meant by *actual* seizin,
nor remark that the person in remainder has not a right of entry
during the continuance of the particular estate. In Massachu-
setts, the proceedings for partition are in some measure regula-
ted by acts of the legislature ; but I believe there is nothing in
those acts which may render the points above mentioned pecu-
liar to them.

From this view of the matter, it appears to me that under the
statutes of *H.* 8, an estate in remainder is not the subject of
partition during the continuance of the precedent estate.

Our statute of March, 1797, is, as I have already remarked,
substantially copied from those two statutes and the statute of
8 and 9 *W.* 3 ; and is not more comprehensive as to the ·subject
of partition.

Our statute for the more easy partition of lands held by co-
parceners, joint tenants and tenants in common, *Rev. Laws* 89,
has never been construed to authorize partition in cases where
by writ it could not be compelled. In fact its construction has
been more limited. Without, however, pursuing that topic, it
is enough for the present occasion to say, it is not broader.
The preamble of that statute shews its design was to provide a
mode of partition less tedious and expensive than by writ, not
one which should extend to other subjects of partition. The
8th section renders a partition under it, of the same validity and
effect to divide and separate the lands, as if made on writ of
partition according to the course of the common law. The 11th
section strongly intimates the position I have stated in respect
to the subjects of partition. It provides for the expense and di-
rects a sale in case of non payment, and that the commissioners'
deed to the purchaser, shall pass as good a title to *the separate*

Up. Freehold *v.* Hillsborough.

*enjoyment* of the same as if all the owners and claimants of shares of the entire tract divided, had joined therein. Now the tract of which a division is here contemplated, is manifestly one of which the owners and claimants of shares might pass a title to *the separate enjoyment.* But the owners of an estate in remainder cannot pass a title to the separate enjoyment of any part. Such an estate then cannot be within the purview of the statute.

Upon the whole, I am of opinion, I have not authority to order the partition now sought.

As I am not aware that the question involved in this case has been before, in this state, presented for determination, I should be happy, if the parties are not fully satisfied, to see the matter placed in such shape as to obtain the opinion of the Supreme Court. This might be done by making an order for division, subject to the decision of that court to be obtained on certiorari as was done in the case of *The State v. Rickey,* 3 *Halst.* 50, or perhaps by an application to the Supreme Court for a mandamus to be directed to me requiring me to make the appointment of commissioners, or the present applicant may sue out a writ of partition.

CITED in *Den v. Baldwin,* 1 *Zab.* 401 ; *Young's Admr.* v. *Rathbone,* 1 *C. E. Green,* 226.